JASON LYONS, and wife, AMY LYONS,    )
    )
        Plaintiffs,    )
    )
v.    )    No. 3:19-CV-325-HBG
    )
THE ERIE INSURANCE COMPANY,    )
    )
        Defendant.    )

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings, including entry of judgment [Doc. 14].

Now before the Court is Plaintiffs' Motion for Partial Summary Judgment [Doc. 18]. Defendant filed a Response [Doc. 27] in opposition to the Motion. The Motion is ripe for adjudication. Accordingly, for the reasons further explained below, the Court **DENIES** Plaintiffs' Motion [**Doc. 18**].

## I.  BACKGROUND

The Complaint in this matter alleges that on July 19, 2018, Plaintiffs lost their residence and personal property to a fire. [Doc. 12-1 at ¶ 3]. The loss to their residence was so extensive that it constituted a "total loss." [*Id.*]. Plaintiffs allege that the loss was covered by their insurance policy and that they performed all conditions precedent to recover pursuant to the policy. [*Id.* at ¶ 6]. Plaintiffs made a demand for payment pursuant to their insurance policy, but Defendant has not made a payment thereunder. [*Id.* at ¶ 7].

Relevant to the instant filings, Defendant pled that the insurance policy does not cover losses that are intentional and that the fire was set by one or more of the Plaintiffs or at Plaintiffs' direction. [Doc. 5 at 4-5].

The following facts are taken from the parties' filings unless otherwise noted. Plaintiffs owned four (4) vehicles but only kept full coverage insurance on their Jeep. [Doc. 28-1 at 56]. Jason Lyons stated that on the Tuesday or Wednesday before the fire,[1] he discovered that the battery on the Jeep was dead. [*Id.* at 96]. On Wednesday night, Jason Lyons hooked the Jeep's battery to a charger so that he could drive the Jeep the next morning. [*Id.* at 100]. On Thursday morning, the Jeep would not start. [*Id.* at 101]. When Jason Lyons left the house, the charger was still connected to the Jeep with the hood up. [*Id.* at 105].

After he left the house, Jason Lyons went through the drive-throughs at the bank and at Hardees. [*Id.* at 109]. He took his dog with him. [*Id.* at 110]. When he returned home, his garage door would not open. [*Id.* at 128]. He then saw smoke coming from the side window. [*Id.* at 130]. Jason Lyons went inside the house, and when he opened the garage door, the "flames shot out at [him]." [*Id.* at 133]. He sustained a burn on his leg. [*Id.* at 138]. Jason Lyons shut the door and ran outside. [*Id.* at 134-35]. He then called 911, and the firefighters quickly arrived. [*Id.* at 142-43].

Jason Lyons testified that the firefighters stayed on the premises for a couple of hours. [*Id.* at 150]. After the firefighters left, Plaintiffs and Jason Lyons's father walked through every room of the house. [*Id.* at 152]. Jason Lyons noticed that the main bedroom seemed twenty (20) degrees hotter, which is the room furthest away from the fire. [*Id.* at 152-53]. Plaintiffs and Jason Lyons's father waited for the fire chief (Adams Shinkle) to come back to the house to bring them the fire

---

[1] The fire occurred on Thursday, July 19, 2018.

report. [*Id.* at 155, 158]. When the fire chief arrived at the house, Jason Lyons walked him to the back bedroom, and the fire chief agreed that the room felt hotter than the other rooms. [*Id.* at 155].

Subsequently, Plaintiffs, Jason Lyons's father, and the fire chief left the house. [*Id.* at 156]. Plaintiffs visited with their insurance agent to ask if they could began taking their stuff out of the house. [*Id.* at 157]. The insurance agent said that he would follow Plaintiffs back to the house so he could take pictures. [*Id.*]. When Plaintiffs and the agent arrived at the house, the house was on fire again. [*Id.*]. The fire department was already there. [*Id.*]. Jason Lyons is not sure who called the fire department. [*Id.* at 162].

Jason Lyons testified that he and his wife were not able to salvage anything out of the house. [*Id.* at 162]. He stated that in February or March of 2018, he and his wife got into an argument, and he moved out. [Doc. 28-2 at 22-23]. He moved into his barbershop and took some personal clothes and a black box containing paperwork. [*Id.* at 25]. Plaintiffs' passports, tax records, financial statements, and marriage certificate were in the black box, but Jason Lyons is not sure what other documents were in the black box. [*Id.* at 32]. Further, Jason Lyons testified that approximately three weeks before the fire occurred, Plaintiffs began moving three or four loads of items from their house to Jason Lyons's barbershop for a garage sale that they intended on having the first week of August. [*Id.* at 48]. Jason Lyons testified that Plaintiffs moved clothes, toy cars, other toys that his kids had outgrown, workout equipment, miscellaneous tools, and pots and pans. [*Id.* at 50-51].

Amy Lyons testified that when she left for work on Thursday morning, the hood on the Jeep was not raised, and she does not know when her husband hooked the Jeep to the battery charger. [Doc. 28-3 at 36]. Amy Lyons stated that she and her husband posted the Jeep on Craigslist to try to sell it before the fire occurred. [*Id.* at 60].

The fire chief, Adam Shinkle ("Shinkle"), testified that when he arrived at Plaintiffs' home, the attached garage was burning. [Doc. 28-4 at 6]. The fire was in the back of the garage behind the Jeep. [*Id.* at 7]. The Jeep had a battery charger connected to it. [*Id.* at 10]. Shinkle testified that the firefighters were able to extinguish the flames within thirty (30) to forty-five (45) minutes, but there was still smoke, and everything was still smoldering. [*Id.* at 11-12]. Shinkle testified that the firefighters made holes in the ceiling so that they could look to determine if there were any fires above the ceiling. [*Id.* at 15]. He testified that the fire was out. [*Id.* at 16, 19]. Shinkle then left and drafted a report. [*Id.* at 19].

When Shinkle returned to the house, Jason Lyons told Shinkle that the master bedroom was still hot. [*Id.* at 20]. Shinkle stated that he went in the master bedroom, but it "didn't feel anything out of the normal." [*Id.*]. Shinkle stated that when he walked back through the garage, there was a hot spot from a pile of insulation and that Shinkle kicked it. [*Id.* at 21]. Shinkle gave Plaintiffs the report. [*Id.* at 22].

Shinkle testified that about thirty (30) minutes later, he received a call that there was a second fire at the house. [*Id.* at 22-23]. When Shinkle arrived, the house was fully involved, especially the far-left corner of the house, opposite from the garage where the fire originally occurred. [*Id.*]. Shinkle does not think that the fire rekindled on its own. [*Id.* at 77].

Dwayne Crabtree ("Crabtree"), who lives in Plaintiffs' neighborhood, provided an Affidavit. [Doc. 28-6]. Crabtree states that in July 2018, he saw Plaintiff Jason Lyons, at around 8:00 p.m., moving multiple boxes and items out of his house into his truck. [*Id.* at ¶ 6].[2] Crabtree states that Plaintiff Jason Lyons moved items for a considerable period of time, maybe forty-five

---

[2] It appears to the Court that the specific date that Crabtree saw Plaintiff Jason Lyons moving items was inadvertently omitted in his Affidavit. Crabtree states, however, that the fires occurred on the following morning after Crabtree saw Plaintiff Jason Lyons moving items. [Doc. 28-6].

(45) minutes or longer. [*Id.*]. Crabtree states that the following morning, a fire occurred at Plaintiffs' house. [*Id.* at ¶ 8]. Crabtree provides that neither Plaintiffs' Jeep, nor their other vehicles, were ever parked in the garage. [*Id.* at ¶ 9]. Crabtree states that Plaintiffs' garage has always been loaded with various items making it impossible for a motor vehicle to fit in the garage. [*Id.*]. Crabtree states that Plaintiffs' garage door is usually raised, but on the morning of the fire, the garage door was shut. [*Id.*].

Finally, Defendant retained an expert, John Farill ("Farill"), who performed a cause and origin analysis of the two fires that occurred at Plaintiffs' home. Farill submitted an expert report, concluding as follows:

1. An effective fire pattern analysis and review of the remaining physical evidence concluded that the residence sustained severe fire, smoke, heat, and water damage.

2. Based upon the fire patterns present and the remaining physical evidence, it was determined that the fire originated in the garage area. The fire in the garage progressed into the attic space above. The structure sustained another fire event approximately 1.5 hours later and spread to the remaining structural areas consuming the majority of the roof, supporting structure and contents.

3. The specific ignition sequence and cause of the fire could not be conclusively determined at the time of our inspection due to severe amount of damages sustained and the lack of remaining physical evidence. However, we cannot eliminate the possibilities of intentionally set fires.

[Doc. 21-1].

## II.   STANDARD OF REVIEW

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of

establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n. 2 (1986); *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the finder of fact. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250.

## III.     ANALYSIS

Accordingly, the Court has considered Plaintiffs' Motion [Doc. 18], and for the reasons more fully explained below, the Court finds it not well taken.

Plaintiffs request summary judgment with respect to Defendant's defense that Plaintiffs intentionally set the fire and/or caused the loss under which they seek to recover benefits under the policy.  For grounds, Plaintiffs argue that Farill acknowledged that the debris samples he collected failed to reveal the presence of ignitable liquids.  In addition, Plaintiffs state that Farill admitted that the specific ignition sequence and cause of the fire could not be conclusively determined at the time of the inspection because of the severe amount of damage sustained and the lack of physical evidence.  Plaintiffs argue that without evidence of an incendiary fire, Defendant's arson defense must fail.

Defendant responds that summary judgment is not appropriate because there are genuine issues of material fact in this case.  Further, Defendant states that it has met its burden, using circumstantial evidence, to establish that Plaintiffs' house was destroyed by arson.

The parties agree that in order to establish arson, a party must show that the loss was due to a fire of incendiary origin, that the insured had an opportunity to set the fire, and that the insured had the motive to do so.  *McReynolds v. Cherokee Ins. Co.,* 815 S.W.2d 208, 211 (Tenn. Ct.  App. 1991).  "In Tennessee, in a civil case, arson may be proved by a simple preponderance of the evidence and may be by circumstantial evidence." *Id.*

As mentioned above, Plaintiffs argue that Defendant cannot establish the first element (i.e., that the fire was incendiary), citing to Farill's report.  The Court notes, however, that while Farill was able to rule out potential sources of the fire, he explicitly could not rule out the possibility that the fire had been set intentionally.  *See Russ v. Safeco Ins. Co. of Am.*, No. 2:11CV195-KS-MTP,

2013 WL 1310501, at *26 (S.D. Miss. Mar. 26, 2013) (explaining that the court was unaware of any opinion holding that the absence of an explicit incendiary fire classification from an expert precludes a claim of civil arson from proceeding past the summary judgment stage). In addition, in his report, Farill stated that according to the laboratory results, no ignitable liquids were identified but such results do not exclude the possibility that an ignitable liquid may have been used. Further, Defendant has presented circumstantial evidence supporting its defense. For example, there is evidence in the record that Plaintiffs never kept their Jeep in the garage, Plaintiffs' neighbor claims that Jason Lyons was moving loads of items out of the house the night before the fire, Plaintiffs added full coverage insurance on the Jeep a few months before the fire occurred, Plaintiff Jason Lyons moved a black box containing important paperwork out of the house a few months before the fire occurred, when Plaintiff Jason Lyons left the morning of the fire, he took his dog with him, and the fire chief testified that the second fire was not from rekindling. The Court finds that the jury should consider and weigh the above circumstantial evidence. Accordingly, Plaintiffs' Motion is not well taken.

## IV.     CONCLUSION

Accordingly, for the reasons explained above, the Court **DENIES** Plaintiffs' Motion for Partial Summary Judgment [**Doc. 18**].

     **IT IS SO ORDERED.**

ENTER:

United States Magistrate Judge